**Ralph J. NOWAK, Plaintiff–Appellant,**

v.

**IRONWORKERS LOCAL 6 PENSION FUND, William Bohen, as Plan Administrator and Trustee, and Richard P. Kempf, as Plan Administrative Manager, Defendants–Appellees.**

No. 675, Docket 95–7566.

United States Court of Appeals, Second Circuit.

Argued Dec. 14, 1995.

Decided April 15, 1996.

Alan J. Bozer, Buffalo, New York (William P. Keefer, Albrecht, Maguire, Heffern & Gregg, P.C., Buffalo, New York, on the brief), for plaintiff–appellant.

Robert L. Boreanaz, Buffalo, New York (Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, on the brief), for defendants–appellees.

Before: WINTER, WALKER, and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

Plaintiff-appellant Ralph J. Nowak appeals from a May 15, 1995, final judgment of the United States District Court for the Western District of New York granting summary judgment in favor of defendants-appellees Ironworkers Local 6 Pension Fund (the "Fund"), William Bohen, and Richard Kempf on the ground that the Fund's denial of Nowak's application for a disability retire-

ment pension was properly based on the clear and unambiguous language of the 1973 version of the Fund's Pension Plan (the "1973 Plan"), and dismissing his complaint with prejudice. On appeal, Nowak argues that the district court erred because the eligibility requirements of the 1973 Plan were ambiguous and therefore, under New York contract law, should have been construed in his favor. As will become clear, we are required to consider whether the court properly exercised subject matter jurisdiction before we turn to the merits of Nowak's appeal.

## I. FACTS

For the purposes of this appeal, the parties do not dispute the following facts. Nowak was a member of the International Association of Bridge, Structural and Ornamental Iron Workers Local Union Number 6 (the "Union") from September 21, 1955, through June 1, 1973, and between September 1955 and June 1971, he worked to accrue approximately 15.2 years of service. As a member of the Union, Nowak was entitled to certain benefits as set forth in the Ironworkers Local No. 6 Pension Plan, which was first established in 1966. When Nowak left the Union, the 1973 version of the Plan was in effect; the Plan was later amended in 1985, 1988, and 1993.

On January 26, 1993, Nowak submitted an application to the Fund for a Total Disability Retirement Pension ("disability pension" or "disability benefits") based on a January 19, 1993, determination by the Social Security Administration that Nowak was disabled and therefore entitled to monthly Social Security disability benefits. Nowak's disability is not disputed.[1] On April 8, 1993, Nowak was informed that his application was denied because he lacked the five years of credited future service (five years of service after June 1, 1966) necessary for vested pension benefits under the Plan. Nowak resubmitted his application for benefits on May 5, 1993, and was again notified of his ineligibility on October 28, 1993. The stated grounds were (1) Nowak's failure to accrue the requisite

five years of credited future service for a vested pension, and (2) the fact that Nowak had incurred a break in service before completing the requirements for disability pension benefits under the Plan.

On January 12, 1994, Nowak filed suit in the New York Supreme Court, Erie County, alleging (1) that the Fund breached its obligation to pay his disability pension under the Plan; (2) that Kempf, as Administrative Manager, breached his fiduciary duty by refusing to pay disability pension benefits under the Plan; and (3) that the Fund violated its obligations to pay retirement disability benefits under the Plan in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). On February 11, 1994, the Fund removed the proceeding to the United States District Court for the Western District of New York, pursuant to 28 U.S.C. § 1441, on the ground that the federal court had original subject matter jurisdiction of the ERISA action.

After removal to federal court, Nowak filed an amended complaint on March 1, 1994, again claiming that the action arose under ERISA, re-stating the three original causes of action, and adding a fourth claim for attorney's fees under ERISA. On June 8, 1994, with the consent of the parties, the district court entered an order referring all further proceedings in the case to United States Magistrate Judge Leslie G. Foschio. *See* 28 U.S.C. § 636(c).

On June 15, 1994, the defendants filed a motion to dismiss or, in the alternative, a motion for summary judgment, arguing that Nowak had failed to exhaust his remedies under the 1993 version of the Pension Plan (the "1993 Plan") before filing suit, and was therefore precluded from filing the action. That motion was amended to argue, as an additional ground for summary judgment, that Nowak was not entitled to benefits under the 1973 Plan because he had failed to accumulate the five years of future service necessary to entitle him to a Vested Deferred Pension under the Plan and he had incurred a break in service prior to fulfilling the re-

---

1. Under ¶ 1.19 of the Plan, the Administrator may accept a determination of eligibility for Social Security disability benefits as a determina-

tion of a permanent disability for purposes of the Plan.

quirements for a Total Disability Retirement Pension. On July 22, 1994, Nowak filed a cross-motion for summary judgment on the ground that his claim was governed by the 1973 Plan, under which he claimed that (1) there was no administrative exhaustion provision and (2) he was entitled to a disability pension.

In a thoughtful Decision and Order filed May 4, 1995, the district court held that it did not have federal subject matter jurisdiction because ERISA did not apply to Nowak's action. Relying on 29 U.S.C. § 1144(b)(1)'s statement that ERISA does not govern "any cause of action which arose, or any act or omission which occurred, before January 1, 1975," the magistrate judge found that Nowak's denial of disability benefits was based on the 1973 Plan's "break-in-service" provision. He held that the 1973 Plan's adoption of its break-in-service policy was the relevant act or omission under § 1144(b)(1), and that because this policy was adopted prior to January 1, 1975, ERISA could not apply to Nowak's action. Accordingly, he found that subject matter jurisdiction did not exist and remanded Nowak's state law claims to state court pursuant to 28 U.S.C. § 1447(c).[2]

On Nowak's oral motion for reconsideration, the district court issued a second Decision and Order on May 12, 1995, exercising supplemental jurisdiction over Nowak's remaining state law claims. Reviewing Nowak's claims under state contract law principles, the court held that the administrative exhaustion requirement of the 1993 Plan was not relevant to Nowak's action and that no such requirement existed under the applicable 1973 Plan. However, it found that based on the unambiguous language of the 1973 Plan, Nowak was not entitled to benefits.

Nowak had applied for a Total Disability Retirement Pension under ¶ 3.4 of the Plan, which reads:

> An Employee shall be entitled to retire on a disability pension if he becomes Totally Disabled on or after June 1, 1966 and after he has completed at least fifteen years of Credited Service.

When the Plan was first established in 1966, it included two provisions for the calculation of accrual of benefits—one based upon a member's service before June 1, 1966, the effective date of the Plan, and the other based upon a member's service after June 1, 1966. Accordingly, an employee's total Credited Service takes into account his service before June 1, 1966 ("Credited Past Service"), and after June 1, 1966 ("Credited Future Service").[3]

The district court found that Nowak accumulated 10.8 years of Credited Past Service and 4.4 years of Credited Future Service for a total of 15.2 years of total Credited Service at the time of his "break in service"[4] on June 1, 1973. The court held that because Nowak incurred a break in service well before he satisfied the criteria for disability retirement benefits—that is, before he was found to be disabled in 1993—he lost all Credited Service pursuant to ¶ 2.5 of the Plan[5] and was not entitled to a disability pension. Observing that it was undisputed that Nowak failed to accumulate the five years of Credited Future Service necessary for him to qualify for a Vested Deferred Pension under ¶ 4.1 (a pension that would have vested prior to Nowak's break in service), the court held that Nowak's break in service was "fatal to his claim for a disability pension under the 1973 Plan," and granted summary judgment in favor of

---

**2.** 28 U.S.C. § 1447(c) provides in relevant part: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

**3.** Credited Service is defined in ¶ 2.1 of the Plan: CREDITED SERVICE shall mean a total of an Employee's Credited Past Service and Credited Future Service as determined in accordance with this Section 2.

**4.** "Break in service" is defined in ¶ 2.4 of the Plan:

BREAK IN SERVICE shall mean a break in the continuity of an Employee's employment after June 1, 1966, and shall be deemed to have occurred if such employee fails to accrue at least 600 hours of Credited Future Service within any period of two consecutive years.

**5.** Paragraph 2.5 of the 1973 Plan states that "[i]f an Employee suffers a Break in Service before he has completed the age, service and *other requirements for retirement* ... he shall lose all Credited Service under the Plan for employment prior to such Break in Service." (Emphasis added.)

the defendants. On May 15, 1995, the court entered a final judgment in the case and dismissed Nowak's complaint with prejudice. Nowak appeals from this judgment arguing that the district court erred in its construction of the terms of the 1973 Plan, and that he is entitled to judgment as a matter of law.

## II. DISCUSSION

Before considering Nowak's appeal on its merits, we must determine whether the district court, having dismissed Nowak's ERISA claim, properly asserted supplemental jurisdiction over his state law claims. To the extent that this inquiry involves a question of subject matter jurisdiction, we determine *sua sponte* whether the court properly exercised its authority. *Mansfield, C. & L.M. Ry. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 511–12, 28 L.Ed. 462 (1884); *Clarkson Co. v. Shaheen,* 544 F.2d 624, 627 (2d Cir. 1976).

### A. *Supplemental Jurisdiction*

■ Under 28 U.S.C. § 1367(a), district courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." While the district court may, at its discretion, exercise supplemental jurisdiction over state law claims even where it has dismissed all claims over which it had original jurisdiction, *see* 28 U.S.C. § 1367(c)(3), it cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction. *Cushing v. Moore,* 970 F.2d 1103, 1106 (2d Cir. 1992); *see In re Joint Eastern and Southern Dist. Asbestos Litig.,* 14 F.3d 726, 730 n. 2 (2d Cir.1993) ("[T]he court may not exercise supplemental jurisdiction over claims unless the court has 'original jurisdiction' over at least one of the plaintiff's claims.").

In its May 4, 1994, Decision and Order, the district court held that it lacked federal subject matter jurisdiction over Nowak's case because ERISA did not apply to Nowak's claim for recovery of benefits. Although it initially remanded the action to state court pursuant to 28 U.S.C. § 1447(c), upon recon-sideration, the district court asserted supplemental jurisdiction over Nowak's state law claims on the ground that

> to now require much of this court's efforts in acquainting itself with the facts and issues of the case to be substantially replicated in state court would not serve the interests of judicial economy, convenience, and fairness that are central to the exercise of supplemental jurisdiction.

■ Insofar as the district court previously determined that there was no original federal subject matter jurisdiction over the suit, it could not exercise supplemental jurisdiction over Nowak's state claims. Nevertheless, because we find that the dismissal of Nowak's ERISA claim is properly construed as a dismissal for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6)—rather than a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)—we affirm his exercise of supplemental jurisdiction and his consideration of Nowak's state contract claims.

■ A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the case. In contrast, a dismissal under Rule 12(b)(6) is a dismissal on the merits of the action—a determination that the facts alleged in the complaint fail to state a claim upon which relief can be granted. While distinguishing between a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) and a dismissal for failure to state a claim under Rule 12(b)(6) appears straightforward in theory, it is often much more difficult in practice. This is particularly so in cases involving federal question jurisdiction under 28 U.S.C. § 1331, which provides district courts with "original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." In federal question cases, the very statute that creates the cause of action often confers jurisdiction as well—that is, the claim "arises under" the same federal law that gives the plaintiff a cause of action.

In most circumstances, it makes little practical difference whether the district court correctly labels its dismissal of an action as one for lack of subject matter jurisdiction under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6). However, there are two important characteristics of a dismissal based on lack of subject matter jurisdiction that can have a great impact on the disposition of a case. First, because a dismissal pursuant to Rule 12(b)(1) is not on the merits, it can have no *res judicata* effect. *Exchange Nat'l Bank v. Touche Ross & Co.*, 544 F.2d 1126, 1130–31 (2d Cir.1976), *modified on other grounds*, 726 F.2d 930 (2d Cir.1984), *cert. denied*, 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984). Second, since a court must have original jurisdiction in order to exercise supplemental jurisdiction, a dismissal pursuant to Rule 12(b)(1) precludes a district court from exercising supplemental jurisdiction over related state claims. *See Cushing*, 970 F.2d at 1106. It is this second characteristic that is the focus of our inquiry in this case.

Generations of jurists have struggled with the difficulty of distinguishing between Rules 12(b)(1) and 12(b)(6) in federal question cases, described by Judge Friendly as a "lesson [that] has been taught as often in decision as it has been ignored in argument and dicta." *Fogel v. Chestnutt*, 668 F.2d 100, 106 (2d Cir.1981), *cert. denied*, 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982). In *The Fair v. Kohler Die and Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411–12, 57 L.Ed. 716 (1913), Justice Holmes described the differences in a federal question case as follows:

> [W]hen the plaintiff bases his cause of action upon an act of Congress jurisdiction cannot be defeated by a plea denying the merits of this claim.... We are speaking of a case where jurisdiction is incident to a Federal statutory cause of action. Jurisdiction is authority to decide the case either way. Unsuccessful as well as successful suits may be brought upon the act.... No doubt if it should appear that the plaintiff was not really relying upon [a federal statute] for his alleged rights, or if the claim of right were frivolous, the case might be dismissed. In the former instance the suit would not really and sub- stantially involve a controversy within the jurisdiction of the court, and in the latter the jurisdiction would not be denied, except possibly in form.

(citations omitted). Two decades later, Justice Black explored the same question:

> [I]t is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction. The previously carved out exceptions are that a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.

*Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) (citations and footnote omitted).

Because of the more-than-occasional difficulties involved in parsing a claim alleging federal question jurisdiction to determine whether it fails to state a claim or fails to meet jurisdictional requirements, the federal courts have followed a general practice of granting jurisdiction in most cases and dismissing for lack of subject matter jurisdiction only under narrow circumstances. In the words of Professor Moore,

> if a federal statute upon which a claim is premised is interpreted to be inapplicable, it could be argued that the plaintiff has failed to present a federal question and thus subject matter jurisdiction is absent. However, the courts have uniformly held that in such instances the preferable practice is to assume that jurisdiction exists and proceed to determine the merits of the claim pursuant to [Rule 12b(6)] or Rule 56.

2A JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 12.07[2.–1], at 12–60 (2d ed.1995). That is, in cases where the asserted basis for subject matter jurisdiction is also an element of the plaintiff's allegedly federal cause of action, we ask only whether—on its face—the complaint is drawn so as to seek recovery under federal law or the Constitution. If so, then we assume or find a sufficient basis for jurisdiction, and reserve further scrutiny for an inquiry on the merits. *Spencer v. Casavilla,* 903 F.2d 171, 173 (2d Cir.1990); *Goldman v. Gallant Sec., Inc.,* 878 F.2d 71, 73 (2d Cir.1989) (per curiam); *Lewis v. Knutson,* 699 F.2d 230, 237 (5th Cir.1983). This approach preserves the exception set forth in *The Fair* and *Bell v. Hood,* permitting the court to dismiss for lack of subject matter jurisdiction—even if a federal claim is asserted on the face of the complaint—where the federal question "is so plainly insubstantial as to be devoid of any merits and thus [does] not present[ ] any issue worthy of adjudication." *Giulini v. Blessing,* 654 F.2d 189, 192 (2d Cir.1981); *see IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1056 (2d Cir.1993) ("The question ... is whether the federal ... claim was so insubstantial, implausible, or otherwise completely devoid of merit as not to involve a federal controversy."), *cert. denied,* —— U.S. ——, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Town of West Hartford v. Operation Rescue,* 915 F.2d 92, 100 (2d Cir.1990) (same; citing cases); *AVC Nederland B.V. v. Atrium Inv. Partnership,* 740 F.2d 148, 152–53 (2d Cir.1984) ("[W]hen the contested basis of federal jurisdiction is also an element of plaintiff's asserted federal claim, the claim should not be dismissed for want of jurisdiction except when it appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.") (internal quotation marks omitted).

 Nowak's complaint alleged federal question jurisdiction on the ground that his claim for benefits "arose under" ERISA, 29 U.S.C. § 1132(a)(1)(B), which gives a plan participant or beneficiary a cause of action "to recover benefits due to him under the terms of his plan." ERISA's jurisdictional provision, 29 U.S.C. § 1132(e)(1), gives state courts and federal district courts "concurrent jurisdiction of actions under subsection (a)(1)(B)." However, pursuant to 29 U.S.C. § 1144—commonly referred to as ERISA's "preemption provision"—ERISA is not applicable where (1) the plaintiff's asserted claim accrued, or (2) the relevant act or omission that served as the basis for the plaintiff's claim occurred, before January 1, 1975.[6] Thus, § 1144 effectively preserves the application of *state law* to any cause of action arising before January 1, 1975, as well as to any claim involving an act or omission occurring before that date. *See Menhorn v. Firestone Tire & Rubber Co.,* 738 F.2d 1496, 1500 (9th Cir.1984). In interpreting the "act or omission" clause of this provision, we have held that ERISA will not apply where a denial of benefits after January 1, 1975, was merely the "inexorable consequence" of a pre–1975 "act or omission." *Lamontagne v. Pension Plan of the United Wire, Metal & Mach. Pension Fund,* 869 F.2d 153, 155–56 (2d Cir.), *cert. denied,* 493 U.S. 818, 110 S.Ct. 72, 107 L.Ed.2d 39 (1989) (citations and quotations marks omitted).

In the instant case, the district court determined that "Nowak applied for a disability benefit pension under the 1973 Plan, and was denied benefits based on the 1973 Plan's break-in-service policy." Drawing on our opinion in *Lamontagne*—in which we found that the district court properly dismissed a plaintiff's claim because the 1978 denial of his pension application "followed inexorably from the pension fund's pre–1975 adoption of its break in employment policy," *Lamontagne,* 869 F.2d at 156—the court held that the inclusion of a break-in-service provision in

---

6. 29 U.S.C. § 1144 provides, in relevant part:

 (a) Supersedure; effective date

 Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

 (b) Construction and application ·

 (1) This section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975.

the 1973 policy was the relevant "act or omission" for purposes of § 1144 and dismissed the claim for lack of subject matter jurisdiction. We do not question the district court's application of § 1144 to the facts of this case—that is, its determination that the Plan's adoption of the 1973 break-in-service policy was the relevant "act or omission," and that the denial of benefits to Nowak in 1993 was merely an "inexorable consequence" of the 1973 policy. Indeed, the court's decision was entirely consistent with *Lamontagne* 's interpretation of ERISA's preemption provision. *See Lamontagne*, 869 F.2d at 156–57. However, we believe that, under the circumstances presented here, his very inquiry into the matter indicates that Nowak's claim should have been dismissed on the merits, rather than for lack of subject matter jurisdiction.

There can be no doubt that on its face Nowak's complaint claims a right of action under federal law, namely ERISA. Paragraph 4 of the amended complaint states: "This action arises under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B)." Nowak's third cause of action specifically sought recovery of the benefits owed to him under the Plan, based on his allegations that (1) he met the Plan's criteria for a total retirement disability pension (Complaint at ¶¶ 6–11), and (2) the Plan denied his pension application on October 28, 1993 (Complaint at ¶ 14). Furthermore, it cannot be said that Nowak's complaint is "plainly insubstantial" or that it fails to present any issue worthy of adjudication. *See Giulini*, 654 F.2d at 192. In this case both federal jurisdiction and the merits of Nowak's federal claim turn on the same question: did the relevant act or omission resulting in the Plan's denial of Nowak's application occur before January 1, 1975? *See* 29 U.S.C. § 1144(b)(1). In order for the district court to answer that question, it had to first study the 1973 Plan's break-in-service provision and assess whether or not the Plan's denial of benefits to Nowak in 1993 was a discretionary decision (in which case the relevant act or omission occurred in 1993) or an "inexorable consequence" of the adoption of the policy in 1973. The jurisdictional question (whether Nowak's claim "arose un-

der" ERISA) and the question on the merits (whether Nowak stated a claim upon which relief could be granted) were inextricably bound together, and required the court to make a substantial inquiry into the statute's applicability. Even though Nowak's claim that ERISA applied to his case was ultimately unsuccessful, it cannot be said that Nowak failed to present any issue worthy of adjudication.

Because Nowak's asserted basis for federal question jurisdiction survives facial scrutiny and is neither immaterial nor insubstantial, we find that the district court erred in characterizing its dismissal of Nowak's claim as one for lack of subject matter jurisdiction. Insofar as Nowak's jurisdictional allegations were not frivolous on their face, his claim deserved at least "a preliminary review on the merits." *Goldman*, 878 F.2d at 73. In these circumstances, the court should, and effectively did, exercise jurisdiction and dismiss the ERISA claim pursuant to 12(b)(6). *See Estate of Soler v. Rodriguez*, 63 F.3d 45, 47 n. 1 (1st Cir.1995) (construing district court's judgment dismissing the complaint for lack of subject matter jurisdiction as one for failure to state a claim where district court failed to follow preferable practice of assuming subject matter exists in case where both federal jurisdiction and existence of federal claim turned on whether complaint stated a federal question).

In so concluding, we recognize that other courts have spoken of § 1144 in "jurisdictional" terms. That is, courts have concluded that § 1144 not only requires the application of *state law* where the relevant act or omission occurred prior to January 1, 1975, but also proscribes a *federal forum* where state law serves as the sole basis for a plaintiff to recover his pension benefits. *See Menhorn*, 738 F.2d at 1503–05; *see also Stevens v. Employer–Teamsters Joint Council No. 84 Pension Fund*, 979 F.2d 444, 449–54 (6th Cir.1992); *Cowan v. Keystone Employee Profit Sharing Fund*, 586 F.2d 888, 893–95 (1st Cir.1978). However, these cases do not squarely address the question now before us: whether a claim that fails to satisfy the requirements of § 1144 is properly dismissed for lack of subject matter jurisdiction under

Rule 12(b)(1) or dismissed on the merits under Rule 12(b)(6). *Cf. Cowan*, 586 F.2d at 895 (referring to a "gray area" in which dismissal of purported ERISA claim might be termed "on the merits" or "jurisdictional"). For example, in *Menhorn*, the Ninth Circuit held that the plaintiff's denial of benefits was an inexorable consequence of an act or omission occurring before January 1, 1975, and accordingly, that state law governed whatever claim to benefits he had. 738 F.2d at 1501–02. In describing ERISA's preemption provision as "jurisdictional," the court was not concerned with whether dismissal under 12(b)(6) or 12(b)(1) was appropriate where a claim failed to satisfy § 1144(b)(1)'s requirements. Rather, it sought to inquire whether Congress intended to create a federal common law of ERISA, thereby permitting federal courts to treat claims that did not satisfy § 1144(b)(1)—claims otherwise governed by state law—as "federal" in nature. *See id.* at 1504. *But see Jameson v. Bethlehem Steel Corp. Pension Plan*, 765 F.2d 49, 52 (3d Cir.1985) (disagreeing with *Menhorn* by holding that *federal court* should apply *state law* in ERISA action where cause of action arose after January 1, 1975, but relevant act or omission occurred prior to that date).

■ We agree with *Menhorn* that federal courts should not entertain claims for benefits by plan participants that do not satisfy § 1144(b)(1)'s criteria—where "ERISA by its own terms does not supplant otherwise applicable state law."[7] *Menhorn*, 738 F.2d at 1503. We part company with the Ninth Circuit only insofar as it described its dismissal of the plaintiff's claim as a dismissal for lack of subject matter jurisdiction. *Id.* at 1505; *see also Stevens*, 979 F.2d at 449–55 (following *Menhorn* where claim failed to satisfy § 1144's criteria; finding that district court was without jurisdiction). We believe that the inquiry necessary to assess a claim's satisfaction of the § 1144 criteria—*i.e.*,

whether the cause of action arose or the relevant act or omission resulting in the denial of benefits occurred after January 1, 1975—is so bound up in the merits of the claim, that if a court determines that a plaintiff has failed to satisfy § 1144, dismissal should be under 12(b)(6) for failure to state a claim, rather than under 12(b)(1). In other words, we find that the district court's conclusion that Nowak's denial of benefits was the inexorable consequence of the 1973 adoption of the break-in-service policy (an act or omission occurring before January 1, 1975) "merely reflects the lack of a remedy ... under federal law, not the lack of a federal question." *Bleiler v. Cristwood Constr., Inc.*, 72 F.3d 13, 15 n. 1 (2d Cir.1995); *see Quinn v. Country Club Soda Co.*, 639 F.2d 838, 841 & n. 3 (1st Cir.1981) (dismissing claim determined to be based on pre–1975 events for lack of subject matter jurisdiction, but acknowledging that "the disposition of cases such as this one fall[s] within a grey area where dismissal might be termed either jurisdictional or on the merits") (internal quotation marks omitted). Accordingly, although the district court in the instant case characterized its judgment as a dismissal for lack of subject matter jurisdiction, we conclude that it was a judgment on the merits pursuant to Rule 12(b)(6).[8]

■ Because a basis for original jurisdiction existed in this case, the district court had the discretion to retain jurisdiction over the plaintiff's supplemental state law claims once it dismissed the underlying federal claim. *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts *may* decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction ....") (emphasis added). In reviewing such a decision to retain jurisdiction we consider factors such as judicial economy, convenience, fairness, and comity. Thus, if

---

7. To the extent that our inquiry ultimately permits the district court's consideration of Nowak's state law claims, it is a result of its exercise of *supplemental jurisdiction* under 28 U.S.C. § 1367—not our conclusion that ERISA itself permits state law claims to be brought in federal court.

8. We recognize that our 1989 opinion in *Lamontagne* affirmed the district court's decision to dismiss the plaintiff's claim for lack of subject matter jurisdiction. Nevertheless, its adoption of the district court's imprecise language regarding the grounds for dismissal, without further discussion, does not bind our present inquiry.

the dismissal of the federal claim occurs "late in the action, after there has been substantial expenditure in time, effort, and money in preparing the dependent claims, knocking them down with a belated rejection of supplemental jurisdiction may not be fair. Nor is it by any means necessary."

*Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir.1994) (quoting 28 U.S.C.A. § 1367, Practice Commentary at 835 (1993)). We find that the magistrate judge, having presided over the case since April 6, 1994, and having dismissed Nowak's federal claim only nine days before it was set for trial, acted well within his discretion in exercising supplemental jurisdiction over Nowak's related state causes of action.

## B. *State Law Contract Claims*

We turn now to Nowak's contract claims under New York law. Nowak contends that the district court erred in determining that the provisions of the 1973 Plan were unambiguous as a matter of law with respect to the requirements for receiving a disability retirement pension, thereby rendering him ineligible for such benefits.

We have repeatedly held that, in a contract dispute, summary judgment may be granted only where the language of the contract is unambiguous. *See, e.g., Sayers v. Rochester Tel. Corp.*, 7 F.3d 1091, 1094 (2d Cir.1993). Under New York law, whether a written contract is ambiguous is a question of law for the trial court whose determinations will be reviewed *de novo. W.W.W. Assoc., Inc. v. Giancontieri*, 77 N.Y.2d 157, 163, 565 N.Y.S.2d 440, 443, 566 N.E.2d 639 (1990). Contract terms are ambiguous if they are capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.

*Sayers*, 7 F.3d at 1095 (internal quotation marks omitted). When the relevant language has "a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion," no ambiguity exists. *Breed v. Ins. Co. of North America*, 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 355, 385 N.E.2d 1280 (1978). On a motion for summary judgment, any ambiguity must be construed against the moving parties, which in this case are the defendants-appellants. *Seiden Assoc. Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 429 (2d Cir.1992).

Upon *de novo* review, we conclude that the district court properly granted summary judgment in favor of the defendants. The 1973 Plan clearly and unambiguously renders Nowak ineligible for a disability retirement pension. Under ¶ 3.4 of the Plan, which establishes the criteria for receiving a Total Disability Retirement Pension, the plaintiff must have become "Totally Disabled on or after June 1, 1966, and ... [have] completed at least 15 years of Credited Service." Paragraph 2.1 of the Plan states that Credited Service must be calculated "*in accordance with this Section 2.*" (Emphasis added.) Specifically, under ¶ 2.5, an employee who suffers a "Break in Service before he has completed the age, service and *other requirements for retirement* ... shall lose all Credited Service under the Plan for employment prior to such Break in Service." (Emphasis added.)

Nowak concedes that he suffered a break in service in 1973 and that he became disabled in 1993. Because his break in service occurred *before* he fulfilled the requirements for obtaining a Total Disability Retirement Pension under ¶ 3.4—that is, before he became disabled—Nowak, pursuant to ¶ 2.5, lost all credited service accumulated before 1973. Accordingly, he was unable to accrue the fifteen years of credited service needed to obtain a disability pension under ¶ 3.4.

Nowak argues that the break-in-service provision of ¶ 2.5 is ambiguous insofar as the term "other requirements" in ¶ 2.5 does not specifically incorporate ¶ 3.4's requirement that he be "Totally Disabled." Contrary to Nowak's contention, when read in conjunction with the rest of the Plan, the phrase "other requirements for retirement" clearly includes the criteria for receiving any of the

retirement pensions defined in Section 3, including the Total Disability Retirement Pension. Because the criteria for qualification varies depending on the individual retirement pension sought by the applicant, the drafters reasonably employed the term "other requirements" in order to reach all of the different requirements of the various retirement pensions. Our view is further supported by the fact that Nowak offers no viable alternative interpretation of the phrase.

Because we find the terms of the 1973 Plan to be unambiguous, we need not reach Nowak's arguments urging us to apply *contra proferentum* and other rules of construction to resolve the alleged ambiguity against the defendants. Based on the clear, unambiguous terms of the 1973 Plan, Nowak is ineligible for the disability retirement pension, and the district court properly granted summary judgment in favor of the defendants.

### III. CONCLUSION

To summarize:

1. Because Nowak's jurisdictional allegations were neither immaterial nor insubstantial, we construe the district court's dismissal of his claim for pension benefits under ERISA as a dismissal on the merits pursuant to Rule 12(b)(6).

2. The district court acted within its discretion, pursuant to 28 U.S.C. § 1367(c)(3), in exercising supplemental jurisdiction over Nowak's related state law claims.

3. Because the Plan clearly and unambiguously rendered Nowak ineligible for a disability pension, summary judgment was properly granted in favor of the defendants.

Accordingly, the judgment of the district court is affirmed.